IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 19, 2016 Session

## STATE OF TENNESSEE v. KHALID M. MOHSSIN

**Appeal from the Circuit Court for Bedford County**
**No. 18005     Forest A. Durard, Jr., Judge**

_____

**No. M2015-02125-CCA-R3-CD – Filed October 6, 2016**

_____

The Defendant, Khalid M. Mohssin, entered an open guilty plea to conspiracy to sell and deliver more than 0.5 grams of methamphetamine, a Class C felony. See Tenn. Code Ann. §§ 39-12-103; -17-417. At the subsequent sentencing hearing, the trial court determined the Defendant would receive a five-year sentence, as a Range I, standard offender, and denied alternative sentencing. On appeal, the Defendant contends that the trial court erred by enhancing his sentence to five years and by denying his request for a suspended sentence. Following our review, we find no abuse of discretion in the trial court's sentencing decision. Accordingly, the judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Guy R. Dotson, Jr., Murfreesboro, Tennessee, for the Appellant, Khalid M. Mohssin.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Robert J. Carter, District Attorney General; and Michael D. Randles, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

On December 15, 2014, the Bedford County Grand Jury charged the Defendant with one count of conspiracy to sell and deliver methamphetamine, a Schedule II

-1-

controlled substance, in an amount greater than 0.5 grams. See Tenn. Code Ann. §§ 39-12-103; -17-417. The Defendant thereafter entered an open guilty plea, and on September 21, 2015, the trial court held a sentencing hearing.

At the sentencing hearing, the court incorporated by reference the following facts that were presented at the plea acceptance hearing:

> [T]his involves a series of controlled buys conducted by a confidential informant working under the direction of the drug task force from Gustavo Garcia here in Shelbyville.
>
> The confidential informant made a series of controlled buys of crystal methamphetamine, specifically one occurred on March 26, 2014[,] and one occurred on March 28, 2014.
>
> . . . .
>
> [T]here was a controlled buy on March 28, 2014[,] . . . with Mr. Garcia at his residence on Union Street. [A]nd he sold approximately an ounce of crystal meth.
>
> Later that day the task force executed a search warrant, found approximately 50 grams of crystal meth. Mr. Garcia was interviewed and indicated he had received that dope from the [D]efendant.
>
> . . . .
>
> When the [D]efendant was interviewed he substantiated that, yes, he had brought that dope to Mr. Garcia with the intent that Mr. Garcia would distribute it and would receive compensation for it.

Additionally, the court heard testimony from Tim Lane, the director of the 17th Judicial District Drug Task Force. Director Lane explained that the drug methamphetamine, specifically crystal methamphetamine or "ice," is a major problem in the judicial district of Bedford County. Ice has a high level of purity and potency, and most of the drug is manufactured in Mexico, smuggled across the border, and then distributed throughout the United States. Director Lane testified the use of ice was on the rise in Bedford County and incarceration provides a deterrent effect for those individuals considering entering the drug trade.

Director Lane further testified that he was familiar with the Defendant's case. Director Lane was involved in the investigation of the Defendant, which also included

another individual, Mr. Garcia. Director Lane received information that Mr. Garcia was involved in the distribution of ice from a tire shop in Shelbyville, Tennessee. Based on this information, Director Lane began an investigation, and a confidential informant was successful in meeting Mr. Garcia. Mr. Garcia gave the informant an amount of ice, for which the informant later paid him. Upon payment, Mr. Garcia gave the informant an additional amount of ice. Following these events, Director Lane executed a search warrant at the tire shop and seized approximately two ounces of ice.

After the search of his tire shop, Mr. Garcia decided to cooperate with law enforcement. Mr. Garcia gave a lengthy confession in which he admitted that both he and the Defendant were involved with a major drug organization in the distribution of ice and cocaine. Mr. Garcia further indicated that the Defendant, along with two individuals from California, brought a substantial amount of ice to his tire shop. The ice was then broken down, packaged for resale, and shipped to a number of states.

Additionally, Mr. Garcia began working as a confidential informant. Mr. Garcia was indebted to the Defendant for a drug payment, and arrangements were made with the Nashville Metropolitan Police Department for that drug payment to be made to the Defendant. The Defendant received $5,000 from Mr. Garcia, $3,000 of which was a drug payment and $2,000 for a personal debt. The Defendant deposited the money into a Nashville bank.

Director Lane testified that the investigation continued, and the Defendant eventually traveled to Bedford County, was arrested, and then "provided a lengthy confession." The Defendant informed the Director that he knew two individuals in California who were "heavily involved in the distribution of illegal drugs." The Defendant admitted to receiving the money from Mr. Garcia as payment for "previously fronted drugs." The Defendant stated that he deposited the money in the Nashville bank and then wire transferred the payment to his contacts in California.

The Defendant further confessed to Director Lane that he had arranged for one of the individuals in California to send a large shipment of ice to Nashville, Tennessee. The shipment was ultimately delivered to Mr. Garcia's tire shop in Bedford County. The Defendant was present when the shipment of drugs was opened. The shipment contained approximately twenty one-gallon cans of ice, and Director Lane testified these drugs would "have a street value of about $2.5 million, at $16,000 a pound." Director Lane claimed this amount was "the largest amount of ice that I know [o]f, that's c[o]me into this particular state or into this particular county, based on the investigation that we conducted." The Defendant was supposed to receive $40,000 in exchange for picking up the shipment in Nashville.

However, Director Lane explained that the Defendant never received this payment due to a conflict with another member of the drug organization located in Memphis, Tennessee. The Defendant had been fronted a kilogram of cocaine, and the Defendant then delivered this cocaine to Mr. Garcia. Mr. Garcia was supposed to sell the cocaine and give the profit to the Defendant. Upon receipt of payment from Mr. Garcia, the Defendant was planning to return the money to his contact in Memphis. However, the money was never collected, and the Defendant became indebted to the drug organization for $50,000. Thus, he never received his $40,000 payment for receiving the ice shipped to Nashville.

Director Lane further explained that the Defendant also confessed to his involvement in distributing about a pound of ice to two individuals in McMinnville, Tennessee. The Defendant indicated he wire transferred money to his contacts in California as payment for the drugs fronted to him. Director Lane testified his agency subpoenaed the Defendant's bank records, and these records reflected wire transfers to California. Finally, Director Lane testified that he made referrals regarding this investigation to other state agencies and the Federal Drug Enforcement Administration.

Regarding the Defendant's overall involvement in this drug organization, Director Lane said, "[The Defendant] was a major player from the standpoint that he was in a pivotal position to help this drug organization to basically smuggle these drugs into Tennessee." He further explained that the Defendant would "hold onto [the drugs] and safe keep them until they could arrive here and take them to a particular location and break them down and ultimately arrange for the shipping of the drugs to other states."

Following Director Lane, the Defendant testified. The Defendant said he was married and had four children. After moving to the Nashville area, he worked at a small grocery store owned by his cousin for about a year and a half. The Defendant claimed he lost his job at the grocery store and faced financial hardship. He feared he would lose his home, and, as a result, entered into a deal to distribute drugs with Mr. Garcia.

The Defendant further testified regarding his lack of a criminal history. The Defendant said he had no prior criminal convictions, nor had he ever been on probation. The Defendant did not have any pending felony charges in any other district, or any additional charges pending in the judicial district of Bedford County.

The Defendant testified he was in a much more stable financial situation at the time of the sentence. He explained that he was buying and selling used cars. In addition to this source of income, the Defendant said he worked two jobs, claiming that he worked for a taxi company part-time and that he worked full-time for an appliance delivery

-4-

company. If placed on probation, the Defendant asserted he would be able to comply with its conditions.

The trial court determined that the Defendant was a Range I, standard offender, and then considered the enhancement factors set forth in Tennessee Code Annotated section 40-35-114 in determining the Defendant's sentence. Due to the testimony and proof related to the Defendant's prior criminal behavior, the court applied enhancement factor number one, which states, "The defendant has a previous history of . . . criminal behavior." Tenn. Code Ann. § 40-35-114(1). This was the only enhancement factor the court applied.

Next, the court assessed the mitigating factors described in Tennessee Code Annotated section 40-35-113. The court applied mitigating factor number one, which states, "The defendant's criminal conduct neither caused nor threatened serious bodily injury"; however, it gave little weight to this factor due to the substantial amount of drugs involved. Tenn. Code Ann. § 40-35-113(1). The court acknowledged that mitigating factors numbers two and seven might apply, but the court placed very little weight on either of these factors. See Tenn. Code Ann. § 40-35-113(2), (7). Factor two states, "The defendant acted under strong provocation," and seven states, "the defendant was motivated by a desire to provide necessities for the defendant's family or the defendant's self." Id. The court explained, "[The Defendant] was having financial difficulties and had a family to feed, but going this far in to a criminal enterprise as he did, is not a justification." The court then applied mitigating factors nine and thirteen because the Defendant "gave considerable amount of information to law enforcement," and "[l]aw enforcement appears to be fairly well satisfied with that information." See Tenn. Code Ann. § 40-35-113(9), (13). Factor nine states, "The defendant assisted authorities in uncovering offenses committed by other persons or in detecting or apprehrending other persons who had committed the offenses," while factor thirteen provides for "[a]ny other factor consistent with the purposes of this chapter." Id. Though the court acknowledged it "would have given [the Defendant] the entire six years" based upon the proof and testimony offered, the court ordered a five-year sentence after applying the mitigating factors.

After reviewing the testimony and the presentence report, which was entered as an exhibit, the trial court also denied any alternative sentence. Upon consideration of the facts and circumstances surrounding the offense and the nature of the criminal conduct, the court denied alternative sentencing for the Defendant because it was concerned probation might depreciate the seriousness of the offense and incarceration was necessary for its deterrent effect. See Tenn. Code Ann. § 40-35-103(1).

It is from this sentencing decision that the Defendant timely appeals. The case is now before us for our review.

## ANALYSIS

On appeal, the Defendant takes exception to the trial court's enhancement of his sentence to five years and its complete denial of any alternative sentence. We address each in turn.

The Sentencing Reform Act was enacted in order "to promote justice" by ensuring that every defendant "be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102. In order to implement the purposes of the Sentencing Reform Act, trial courts must consider several sentencing principles. The sentence imposed for an offense "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the pruposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2),(4). Thus, before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Bise, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The burden of showing that a sentence is improper is upon the appealing

party.  See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).


## I. Length of Sentence


Regarding the Defendant's enhanced sentence, he argues the trial court improperly weighed the enhancing factors and mitigating factors of his case according to Tennessee Code Annotated sections 40-35-114 and -113.  The Defendant argues his prior criminal conduct should not be used as an enhancement factor against him because the State knew of this activity and failed to arrest him or bring charges against the Defendant for this conduct.  This conduct included two other drug transactions, to which the Defendant confessed to Director Lane following his initial arrest.

Director Lane later used information regarding these two drug transactions to pursue various leads in both Tennessee and California.  The trial court considered this admission as a basis for a mitigating factor in that the Defendant's information was used to assist law enforcement.  The Defendant posits the trial court "created a legal conundrum by finding that [the Defendant's] drug transactions operated both as an enhancement factor (prior criminal conduct), all the while finding that the same information, his drug transactions, served as a mitigating factor of assisting authorities."

Ultimately, the Defendant argues that after balancing the enhancing and mitigating factors, the court should have reduced the Defendant's sentence to a three-year minimum rather than enhancing it to a five-year sentence.  The State responds that there was no error in enhancing the Defendant's sentence because the trial court, in its discretion, properly weighed the enhancing and mitigating factors regarding the length of the sentence.  See Tenn. Code Ann. § 40-35-210(e).

After considering the applicable law and the record, we conclude that the trial court's imposition of a five-year sentence is presumptively reasonable.  The Defendant does appear to have participated in prior criminal conduct.  See Tenn. Code Ann. § 40-35-114(1).  According to the presentence report, the Defendant admitted to receiving a pallet of green bean cans filled with crystal methamphetamine and holding the pallet at Mr. Garcia's tire shop.  Furthermore, the Defendant admitted to bringing approximately one kilogram of cocaine to Mr. Garcia's tire shop.  Also, the Defendant confessed to delivering half-pound quantities of crystal methamphetamine on two separate occasions to an individual in McMinnville, Tennessee.  The Defendant has demonstrated that he has been involved with prior criminal conduct, and the trial court appropriately used this prior conduct as an enhancing factor in determining the Defendant's sentence.

The trial court gave little weight to any potential mitigating factors, though it did acknowledge that the Defendant "gave considerable amount of information to law enforcement" and "[l]aw enforcement appears to be fairly well satisfied with that information." See Tenn. Code Ann. § 40-35-113(9). Thus on balance, the court determined it "would have given [the Defendant] the entire six years," but "it needs to be knocked down a little bit, because of consideration of some of the mitigating factors." We find the trial court appropriately weighed the enhancing and mitigating factors when determining the length of the Defendant's sentence. See Tenn. Code Ann. §§ 40-35-113; 40-35-114. Thus, the record evidencing no abuse of discretion, the Defendant's within-range sentence of five years was proper.

## II. Alternative Sentencing

A defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6)(A). However, no longer is any defendant entitled to a presumption that he or she is a favorable candidate for alternative sentencing. Carter, 254 S.W.3d at 347. Tennessee Code Annotated section 40-35-102(6) is now only advisory. See Tenn. Code Ann. § 40-35-102(6)(D).

A trial court should consider the following when determining any defendant's suitability for alternative sentencing:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which

-8-

the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

An offender is eligible for probation if he or she is sentenced to ten years or less and has not been convicted of certain specified offenses. See Tenn. Code Ann. § 40-35-303(a). While the trial court was required to automatically consider probation as a sentencing option, see Tennessee Code Annotated section 40-35-303(b), no criminal defendant is automatically entitled to probation as a matter of law, see State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). It is the defendant's burden to establish his or her suitability for full probation. See Carter, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)). The defendant must demonstrate that probation will "subserve the ends of justice and the best interests of both the public and the defendant." Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956), overruled on other grounds, State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

The Defendant argues he is a prime candidate for probation in that "the nature and circumstances of the offense . . . were due to dire financial hardships which he expressed great regret, remorse, full culpability for and a further denouncement of that type of criminal activity in the future." Additionally, the Defendant "has no criminal history." Furthermore, the Defendant "has a strong family and social background of employment stability, family relations, and a number of dependents whom depend upon his financial support." The Defendant has "at least three avenues of income," and he lacks "mental and/or physical deficiencies." The Defendant acted with truthfulness and candor to the trial court, and the court specifically noted that both the court and law enforcement were satisfied with the Defendant's truthfulness.

Regarding the court's denial of probation due to a fear of depreciating the seriousness of the offense under Tennessee Code Annotated section 40-35-103(1)(B), the Defendant claims the court failed to make findings that "the criminal act, as committed, would be described as especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree; and it would be clear that, therefore, the nature of the offense, as committed, outweighed all other factors favoring probation."

Additionally, the Defendant argues that the court failed to establish the requisite "proof of deterrence" to support a denial of probation. The Defendant claimed that probation would not reduce the deterrent effect of this case because "this case created no notoriety for the [Defendant] or anyone else, no news coverage or other publication of this case was ever at issue, and [Defendant's] residence is in another county." Thus, there would likely be little deterrent effect.

In response, the State argues the trial court properly sentenced the Defendant and the record shows no abuse of discretion. Specifically, the State argues that "the trial court gave careful consideration to the factors relevant to probation, including the circumstances of the offense and the [D]efendant's personal history." However, "the court chose to rely heavily on the fact that the [D]efendant admitted to being involved in [a] conspiracy that shipped a record-setting amount of Mexican-manufactured 'ice' into [Tennessee]."

After reviewing the presentence report and considering the proof offered at the sentencing hearing, the trial court based its denial of any alternative sentence upon the following grounds:

> I think I have to articulate on the record quite a bit about these two last factors, the depreciating the seriousness of the offense and the deterrence factor.
>
> This is probably the largest amount of drugs as I have ever seen come through Bedford County. I don't recall ever having been involved in a case as defense counsel or as the Judge of the circuit court, where there were [$]2.1 to $2.5 million in drugs brought in here from Mexico via California via Nashville down to Shelbyville, Tennessee, in my career . . .
>
> And whether confinement would be particularly suited to provide an effective deterrent to others. I mean, I think it would.
> . . . .
> I've determined the length of the sentence to be 5 years.
>
> I think that [the Defendant], maybe he got sucked into this, got in over his head. It's kind of hard to tell. But even if that were true, he began to become a bigger and bigger player in the situation.
>
> And whether he necessarily handled the drugs or not, he is responsible for their presence in setting up some of these deals, that he got here by calling . . . whoever else was in California . . . . And arranging these drugs to be shipped from California into Nashville and then eventually to Shelbyville, Tennessee.
>
> So I believe in this particular case, given the enormity of the amount of drugs brought down here . . . .

So I'm going to make him a 5 year sentence at 30 percen[t].

While acknowledging that the Defendant "has no record" and he "seems to be a pretty good family history," the court found the amount of drugs so great the court feared an alternative sentence would "depreciate the seriousness of the offense."  See Tenn. Code Ann. § 40-35-103(1).  The court further concluded, "[T]here needs to be some deterrent effect here."  See id.

We agree that the Defendant's level of involvement in bringing such a substantial amount of drugs into Tennessee adequately supports the denial of an alternative sentence. The trial court followed the statutory sentencing procedure, properly weighing the factors and principles in denying alternative sentencing, and placing its reasoning for denying an alternative sentence on the record.  Accordingly, the Defendant has failed to establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded to the trial court's denial of alternative sentencing, including probation.

CONCLUSION

Based upon the foregoing, the judgment of the trial court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE

-11-